JOHN F. BAUM (SBN 148366)
jbaum@hkemploymentlaw.com
AMY A. DURGAN (SBN 245325)
adurgan@hkemploymentlaw.com
HIRSCHFELD KRAEMER LLP
505 Montgomery Street, 13th Floor
San Francisco, CA 94111
Telephone: (415) 835-9000
Facsimile: (415) 834-0443

Attorneys for Defendant
VITAS HEALTHCARE CORPORATION OF CALIFORNIA

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN M. FREEDMAN, M.D.,<br><br>Plaintiff,<br><br>vs.<br><br>VITAS SOLUTIONS, INC., a Delaware corporation, VITAS HME SOLUTIONS, INC., a Delaware corporation, VITAS HEALTHCARE CORPORATION OF CALIFORNIA, a Delaware corporation, VITAS HEALTH SERVICES OF CALIFORNIA, INC., a California corporation, and DOES 1-50,<br><br>Defendants. | Case No.<br><br>**DEFENDANT VITAS HEALTHCARE CORPORATION OF CALIFORNIA'S NOTICE OF REMOVAL TO FEDERAL COURT UNDER 28 U.S.C. §§ 1332; 1441 (a), (b) [DIVERSITY JURISDICTION]**<br><br>**STATE COURT CASE NO. C-17-01076**<br><br>[FILED CONCURRENTLY WITH CIVIL COVER SHEET, DECLARATION OF DEAN ROBERTSON, DECLARATION OF AMY A. DURGAN, AND REQUEST FOR JUDICIAL NOTICE]<br><br>**Complaint Filed:** June 14, 2017 |

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA:**

**PLEASE TAKE NOTICE THAT**, pursuant to 28 U.S.C. §§ 1332, 1441(a), (b), and 1446, Defendant VITAS HEALTHCARE CORPORATION OF CALIFORNIA ("Defendant") hereby removes the above-entitled action from the Superior Court of California, County of Contra Costa, to the United States District Court for the Northern District of California.

///

This Court has original jurisdiction over this action under 28 U.S.C. §1332 because this action involves citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

## I. PROCEDURAL BACKGROUND

On June 14, 2017, Plaintiff Steven M. Freedman, M.D. ("Plaintiff") filed a Complaint in the Superior Court of the State of California, Contra Costa County, entitled *Steven M. Freedman, M.D. v. Vitas Solutions, Inc., a Delaware corporation; Vitas HME Solutions, Inc., a Delaware corporation; Vitas Healthcare Corporation of California, a California corporation, Vitas Health Services of California, Inc., a California corporation, and Does 1-50*, Case No. C-17-01076 (the "Complaint"). A true and correct copy of the Complaint is attached hereto as Exhibit A. The Complaint purports to state causes of action against Defendants related to Plaintiff's employment and the termination thereof, as follows: (1) violation of California Labor Code §1102.5; (2) wrongful termination in violation of public policy; and (3) failure to pay all wages due at termination.

Plaintiff served the Complaint on June 21, 2017. The Notice of Service of Process is attached as Exhibit B.

On July 19, 2017, Defendant filed its Answer in the Sacramento County Superior Court. A true and correct copy of the Answer is attached as Exhibit C.

On July 18, 2017, Defendant's counsel John Baum and Amy Durgan contacted Plaintiff's counsel Tamarah Prevost by phone to inform her that only VITAS HEALTHCARE CORPORATION OF CALIFORNIA was a proper defendant in this action, as it was Plaintiff's employer, and that the other three defendants, VITAS SOLUTIONS, INC., VITAS HME SOLUTIONS, INC., and VITAS HEALTH SERVICES OF CALIFORNIA, INC. should be dismissed. Defendants' counsel also offered to provide a declaration attesting to these facts. (Durgan Decl. ¶3.) The following day, July 19, 2017, Defendant's counsel emailed a declaration signed under penalty of perjury from Senior Corporate Counsel for Defendant stating that VITAS HEALTHCARE CORPORATION OF CALIFORNIA was the Plaintiff's employer, and that the other three entities were improperly named as defendants in this action. (Durgan Decl. ¶4 & Ex.



HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

B.) On July 21, 2017, Plaintiff's counsel responded that Plaintiff would agree to dismiss VITAS SOLUTIONS, INC., VITAS HME SOLUTIONS, INC., and VITAS HEALTH SERVICES OF CALIFORNIA, INC. as defendants without prejudice. (Durgan Decl. ¶5 & Ex. C.) Therefore, the only defendant at issue here is VITAS HEALTHCARE CORPORATION OF CALIFORNIA.

## II. GROUNDS FOR REMOVAL ON THE BASIS OF DIVERSITY

### A. There Is Complete Diversity of Citizenship.

This case is properly removable to this Court pursuant to 28 U.S.C. §1441, which provides in pertinent part:

> Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

Further, this action is properly removable under 28 U.S.C. §1441 because the United States District Court has original jurisdiction of this case under 28 U.S.C. §1332(a), as amended, which provides in pertinent part:

> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between —
>
> (1) citizens of different states . . . .

There is complete diversity of citizenship between Plaintiff and Defendant in this case. First, citizenship of a natural person is determined by his or her state of domicile. *See Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). As alleged in the Complaint, beginning in October 2014, Plaintiff worked for VITAS at its Walnut Creek, California location, and alleges his employment was terminated there as well. (Complaint, ¶¶11, 62.) He further alleges that "A majority of the allegations herein described occurred at the Vitas East Bay location, 355 Lennon Ln, Ste. 150 Walnut Creek, CA 94598." (Complaint, ¶10.) Additionally, the license verification website of the State of California's Department of Consumer Affairs lists Plaintiff's current address of record as 140 Treat Boulevard in Walnut Creek, California. (Request for Judicial Notice, ¶1; Durgan Decl. ¶2 & Ex. A.) Therefore, Plaintiff is domiciled in the State of California.



HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Second, the citizenship of a corporation is determined by the place of its incorporation and its principal place of business. *Industry Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1093 (9th Cir. 1990). At the time of the commencement of this action, and at all times thereafter, Defendant is a corporation organized under the laws of the State of Delaware. (Robertson Decl. ¶2.) Indeed, Plaintiff's Complaint even alleges that Defendant VITAS HEALTHCARE CORPORATION OF CALIFORNIA is a Delaware corporation. (Complaint, ¶14.)

The U.S. Supreme Court adopted the "nerve center" test to determine a corporation's "principal place of business," which "normally will be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center,' and not simply an office where the corporation holds its board meetings." *Hertz v. Friend*, 559 U.S. 77, 92-93 (2010). At the time of the filing of the Complaint in this case and as of today, Defendant maintains its headquarters in Miami, Florida at 201 South Biscayne Boulevard, Suite 400. (Robertson Decl. ¶3.) In addition, the large majority of Defendant's officers resides and works in the Miami, Florida area and, when decisions are made about the business of VITAS, such decisions are made by those officers in Miami, Florida. (Robertson Decl. ¶4.) Accordingly, at the time of the filing of the Complaint in this case and as of today, Defendant's "principal place of business" is in Florida. VITAS HEALTHCARE CORPORATION OF CALIFORNIA is therefore a citizen of Delaware and Florida, not California.

Lastly, the citizenship of "Doe" Defendants 1 through 50 is disregarded for purposes of removal jurisdiction. See 28 U.S.C. §1332(c)(1). Thus, there is complete diversity of citizenship under 28 U.S.C. §1332(a).

**B. <u>The Amount In Controversy Exceeds $75,000.</u>**

Under 28 U.S.C. §1332(a), federal district courts have diversity jurisdiction over civil actions where the amount in controversy exceeds $75,000, exclusive of costs and interest. If it is "unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled," the Court must determine whether it is it is "more likely than not" that the amount in controversy exceeds $75,000. *See Guglielmino v. McKee Foods Corp.*, 506 F.3d 696,



HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

699 (9th Cir. 2007). The Court must consider any "sum which would entail a payment" by the defendant, including damages for lost wages, lost future wages, the value of lost health benefits, compensatory damages, punitive damages, and attorneys' fees. *Id.* at 701.

Here, although the Complaint does not specify the amount of damages at issue, there is no doubt that the damages Plaintiff seeks – including compensatory damages, punitive damages and attorneys' fees – exceed $75,000. Plaintiff alleges that he was employed by Defendant beginning in October 2014. (Complaint, ¶11.) He further alleges that his employment was terminated on or about August 2016, approximately eleven months ago. (*Id.*, ¶63.) He seeks general, special and consequential damages; prejudgment interest; waiting time penalties; and other applicable damages. (Complaint at ¶¶73, 78, 84; and Plaintiff's Prayer for Relief, p. 15, lines 5-12.)

Further, Plaintiff seeks attorneys' fees. "[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." *Guglielmino, supra*, 506 F.3d at 700. A litigant who successfully establishes retaliation in violation of Labor Code §1102.5 may recover attorneys' fees under Code of Civil Procedure §1021.5. *See* Cal. Code Civ. Proc. §1021.5; *Jaramillo v. County of Orange*, 200 Cal. App. 4th 811 (2011). The Ninth Circuit has affirmed removal where the district court "conservative[ly]" estimated attorneys' fees to be 12.5% of the actual damages sought. *Guglielmino, supra*, 506 F.3d at 698.

Finally, Plaintiff seeks punitive damages. In *Guglielmino*, the court "conservative[ly]" estimated punitive damages at a ratio of 1:1 with the actual damages sought. *Id*. In view of Plaintiff's requested damages, punitive damages could independently amount to at least $75,000 if Plaintiff prevails at trial.

In sum, the damages Plaintiff seeks far exceed the jurisdictional minimum to satisfy diversity jurisdiction. Accordingly, the jurisdictional "amount in controversy" requirement has been met for purposes of the diversity statute.

If any question arises as to the propriety of the removal of this action, Defendant requests the opportunity to present both written and oral arguments in support of its position that this action is removable to the district court.





HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## III. THE NOTICE OF REMOVAL IS TIMELY

Removal of a complaint from state court to federal court must be effected within 30 days from the first date from which it can be ascertained that federal subject matter jurisdiction exists. *See*, *e.g.*, 28 U.S.C. § 1446(b). That statute provides, in relevant part:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based…

*Id*.

As noted, the Complaint was served on June 21, 2017 (Exhibit B), and this Notice of removal was filed on July 21, 2017, within 30 days of such service. Accordingly, this Notice of Removal is timely.

## IV. INTRADISTRICT ASSIGNMENT

The events allegedly giving rise to this action occurred in Contra Costa County, California. (Complaint, ¶¶10, 11.) Therefore, venue is proper in the United States District Court for the Northern District of California.

## V. CONCLUSION

For all of the foregoing reasons, removal of this action to federal court is proper. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332(a) and 1441.

Dated: July 21, 2017 HIRSCHFELD KRAEMER LLP

By: */s/ Amy A. Durgan*
John F. Baum
Amy A. Durgan
Attorneys for Defendant
VITAS HEALTHCARE CORPORATION OF CALIFORNIA

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# Exhibit A

JUSTIN T. BERGER (SBN 250346)
jberger@cpmlegal.com
TAMARAH P. PREVOST (SBN 313422)
tprevost@cpmlegal.com
COTCHETT, PITRE & McCARTHY, LLP
840 Malcolm Road
Burlingame, California 94010
Telephone: (650) 697-6000
Facsimile: (650) 692-3606

*Attorneys for Plaintiff*

FILED
2017 JUN 14 P 12:54
STEPHEN H. NASH
CLERK OF THE SUPERIOR COURT
COUNTY OF CONTRA COSTA, CA
BY
K. VAQUERANO

**SUPERIOR COURT OF CALIFORNIA**

**IN AND FOR THE COUNTY OF CONTRA COSTA**

**STEVEN M. FREEDMAN, M.D.**, an individual,

Plaintiff,

v.

**VITAS SOLUTIONS, INC.**, a Delaware corporation, **VITAS HME SOLUTIONS, INC.**, a Delaware corporation, **VITAS HEALTHCARE CORPORATION OF CALIFORNIA**, a Delaware corporation, **VITAS HEALTH SERVICES OF CALIFORNIA, INC.**, a California corporation, and DOES 1-50,

Defendants.

CASE NO. C 17-01076

**COMPLAINT FOR MONEY DAMAGES AND INJUNCTIVE RELIEF FOR:**

1. **VIOLATION OF CALIFORNIA LABOR CODE § 1102.5**
2. **WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**
3. **FAILURE TO PAY ALL WAGES DUE AT TERMINATION**

**DEMAND FOR JURY TRIAL**

PER LOCAL RULE 5 THIS CASE IS ASSIGNED TO DEPT 39

BY FAX

SUMMONS ISSUED

## TABLE OF CONTENTS


Page

I. INTRODUCTION ..... 1

II. VENUE AND JURISDICTION ..... 2

III. THE PARTIES ..... 2

IV. FACTUAL ALLEGATIONS ..... 4

A. THE BASICS OF HOSPICE CARE AND THE MEDICARE SYSTEM ..... 4

B. PLAINTIFF'S DISCOVERY OF DEFENDANTS' FRAUDULENT SCHEME ..... 5

C. PLAINTIFF'S ATTEMPTS TO STOP DEFENDANTS' FRAUD, AND DEFENDANTS' RETALIATION ..... 8

1. Plaintiff's First Attempts to Stop Defendants' Fraud ..... 9

2. Plaintiff's Second Attempt to Stop Defendants' Fraud ..... 9

3. Plaintiff's Third Attempt to Stop Defendants' Fraud ..... 9

4. Plaintiff's Fourth Attempt to Stop Defendants' Fraud ..... 10

5. Plaintiff Intensifies His Efforts to Stop Defendants' Fraud ..... 10

6. Defendants Terminate Plaintiff for Reporting and Interfering With Their Illegal Activities ..... 11

V. CAUSES OF ACTION ..... 12

FIRST CAUSE OF ACTION
RETALIATION, Lab. Code § 1102.5
(by Plaintiff against all Defendants) ..... 12

SECOND CAUSE OF ACTION
WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY
(by Plaintiff against all Defendants) ..... 13

THIRD CAUSE OF ACTION
FAILURE TO PAY WAGES DUE; WAITING TIME PENALTIES
LAB. CODE §§ 201, 202, 203
(by Plaintiff against all Defendants) ..... 14

VI. PRAYER FOR RELIEF ..... 15

VII. JURY DEMAND ..... 15

Plaintiff Steven M. Freedman, M.D., ("Dr. Freedman" or "Plaintiff") by his undersigned counsel, hereby complain against Vitas Solutions, Inc., Vitas HME Solutions, Inc., Vitas Healthcare Corporation of California, Delaware corporations; Vitas Health Services of California, Inc., a California corporation (collectively "Defendants," "Vitas East Bay" or "Vitas"); and DOES 1-50, and allege as follows:

## I. INTRODUCTION

1. Through its hospice program, Vitas purports to preserve dignity in the face of terminal illness by controlling pain, reducing anxiety, and offering spiritual and emotional support to patients and their families. At first glance, Vitas appears to take seriously the essential service they provide to those in their last stages of life. In reality, deceit and greed infect nearly every level of the Vitas structure. Incubating in upper management, and travelling swiftly through each artery, Vitas' fraudulent scheme meets some of its patients from the moment of first contact.

2. Some talented doctors and staff whose ethical underpinnings are too strong to succumb to Vitas' fraud are either forced out or leave voluntarily, finding work elsewhere in the healthcare sector where caring for the sick is prioritized over profit. There were a select few however, who believed that through good faith effort, they could convince Vitas management of the virtues of following the rules. This action is about protecting one such individual, a palliative care physician, who stood up for what was right and was terminated directly as a result.

3. Dr. Freedman began as a Team Physician at Vitas after thirty (30) years of practicing medicine. He was quickly promoted to Hospice Medical Director ("HMD") based on his clinical and service excellence, and hoped to make Vitas the premier hospice in the Bay Area.

4. Within weeks of accepting his new position, Dr. Freedman observed Vitas staff admit patients who were not appropriate for hospice. This was no innocent error: Vitas misclassifies patients who are not terminally ill as requiring hospice care in order to obtain the corresponding Medicare reimbursement.

5. First, individuals are improperly admitted as hospice patients via an aggressive Marketing and Admissions Department that cuts corners from an already pithy screening process. Next, Vitas' staff and certain nurses and doctors participate in certifying and re-certifying patients

as terminally ill, and collecting Medicare reimbursements for them. This conduct is blessed by Vitas leadership.

6. Not all Vitas' employees participated in this fraud. Those who choose not to, however, are forced out. One such individual, Patient Care Administrator Almea Luis, faced unremitting hostility after bringing forth her concerns about these behaviors and ultimately left Vitas as a result.

7. In his role as HMD, Dr. Freedman was ultimately responsible for assuring the appropriateness of all hospice patients. Dr. Freedman made repeated efforts to end Vitas' fraudulent activity, and brought his concerns to Defendants numerous times, to no avail.

8. As a direct result of Dr. Freedman notifying Defendants of these illegal activities, and actively trying to rectify them, he was terminated. Accordingly, Plaintiff brings this action for whistleblower retaliation under California Labor Code § 1102.5, Wrongful Termination in Violation of Public Policy, and Waiting Time Penalties pursuant to California Labor Code §§ 201, 202, and 203.

## II. <u>VENUE AND JURISDICTION</u>

9. This Court has jurisdiction over this action pursuant to Code of Civil Procedure Sections 410.10 and 410.40. Plaintiff's employment agreement with Defendants establishes California as the agreed upon jurisdiction and choice of law for any disputes arising from those agreements.

10. A majority of the allegations herein described occurred at the Vitas East Bay location, 355 Lennon Ln, Ste. 150 Walnut Creek, CA 94598. Accordingly, Defendants' liability arose in Contra Costa County and venue is therefore proper in this Court pursuant to Code of Civil Procedure section 395.5.

## III. <u>THE PARTIES</u>

11. **Plaintiff Steven M. Freedman, M.D.** ("Dr. Freedman") is a licensed physician. Dr. Freedman received his B.A. *summa cum laude* in political science from Princeton University and graduated from Stanford Medical School in 1982. He was Chief Resident in his Residency program. His medical career began as a Family Practitioner at Kaiser Permanente, where he

worked for roughly twenty-seven (27) years. He became Board Certified in Palliative Care in 2002 and founded the Palliative Care program at the Kaiser Permanente Oakland Medical Center. After serving as the Medical Director for the Oakland/Richmond Hospice Program from 2001-2006, he was a Palliative Care Physician, Hospitalist, and served as the inpatient patient management service from 2005-2014. Among many other recognitions, Dr. Freedman won Physician of the Year Awards in 1992 and the Lowell Beal Residents' Award, which is presented to an inpatient staff member who "is an example of academic excellence combined with warm humanity." In October 2014, Dr. Freedman joined Vitas to work in Vitas Walnut Creek location, at 355 Lennon Ln #150, Walnut Creek, CA 94598 ("Vitas East Bay") as an Assistant Hospice Medical Director (Team Physician).

12. **Defendant Vitas Solutions, Inc.** is a Delaware corporation which conducts business in Contra Costa County, which includes operating Vitas East Bay.

13. **Defendant Vitas HME Solutions, Inc.** is a Delaware corporation which conducts business in Contra Costa County, which includes operating Vitas East Bay.

14. **Defendant Vitas Healthcare Corporation of California** is a Delaware corporation which conducts business in Contra Costa County, which includes operating Vitas East Bay.

15. **Defendant Vitas Health Services of California, Inc.** is a California corporation which conducts business in Contra Costa County, which includes operating Vitas East Bay.

16. **Defendants DOES 1-50** are fictitious names for individuals or entities that may be responsible for the wrongful conduct alleged that caused harm to Plaintiff, the true names and capacities of which are unknown to Plaintiff, but Plaintiff will amend this complaint when and if the true names of said Defendants become known to him.

17. Each of the individual Defendants and Doe Defendants were an agent of Vitas and the other Doe Defendants, and in performing the acts alleged in this Complaint were acting within the course and scope of that agency.

18. Each of the Defendants have participated, as members of the conspiracy, and have acted with or in furtherance of said conspiracy, or aided or assisted in carrying out the purposes of the conspiracy, and have performed acts and made statements in furtherance of the conspiracy and

other violations of California law. Each of the Defendants acted both individually and in alignment with other Defendants with full knowledge of their respective wrongful conduct. As such, the Defendants conspired together, and with other unnamed co-conspirators, building upon each other's wrongdoing, in order to accomplish the acts outlined in this Complaint. Defendants are individually sued as principals, participants, and aiders and abettors in the wrongful conduct complained of, the liability of each arises from the fact that each has engaged in all or part of the improper acts, plans, schemes, conspiracies, or transactions complained of herein.

## IV. FACTUAL ALLEGATIONS

### A. THE BASICS OF HOSPICE CARE AND THE MEDICARE SYSTEM

19. Vitas purports to be "the nation's leading provider of hospice care services." Hospice care is a special form of care for people with life-limiting illnesses. Per Medicare regulations, hospices aim to provide palliative care, as opposed to curative care, only to patients who have a prognosis of six months or less. Palliative care is aimed at relieving the pain, symptoms, and/or stress of terminal illness and includes a comprehensive set of medical, social, psychological, emotional, and spiritual services provided to a terminally ill individuals, their families, and caregivers.

20. Vitas' hospice care services are for adult and pediatric patients with a wide range of life-limiting illnesses, including cancer, stroke, heart disease, lung disease, liver disease, kidney disease, multiple sclerosis, ALS, Alzheimer's, and AIDS.

21. Medicare pays for hospice care for eligible Medicare recipients.[1] These patients must also agree to forego curative treatment of their terminal illness and formally consent to hospice care in lieu of all other Medicare benefits.

22. Pursuant to Medicare regulations, in order to be eligible to elect hospice care, an individual must be (1) entitled to Medicare, and (2) certified as "terminally ill" in accordance with 42 C.F.R. § 418.22. *See* 42 C.F.R. § 418.20. To be a "terminally ill" person means to have "a medical prognosis that his or her life expectancy is 6 months or less if the illness runs its normal

[1] Medicare is a federally-funded healthcare program that provides medical insurance coverage to qualified residents of the United States who are aged sixty-five (65) and older, younger people with permanent or congenital disabilities, or those who meet other special criteria like the End Stage Renal Disease program.

course." *See* 42 C.F.R. § 418.3.

23. Hospice care is available to individuals for two initial ninety (90) day periods, followed by an unlimited number of sixty (60) day periods, provided that at the beginning of each period a physician certifies the individual's terminal condition in writing. 42 C.F.R. § 418.21.

24. The first 90-day period must be certified by (a) the Medical Director of the hospice or a physician-member of the hospice inter-disciplinary group; and (b) the individual's attending physician, provided there is one. 42 C.F.R. § 418.22(c)(1). For subsequent periods, the only requirement is certification by one of those physicians. 42 C.F.R. § 418.22(c)(2).

25. A hospice physician or nurse practitioner must have a "face-to-face encounter" with each hospice patient who has been on hospice for all or part of two certification periods. 42 C.F.R. § 418.22(a)(4).

26. Medicare payments are typically made directly to health care providers rather than the patient, as Medicare recipients routinely assign their right to payment to a health care provider, such as Vitas. Once a Medicare recipient assigns their right to payment to a provider, the provider then submits its bill directly to Medicare for payment. Based on the number of days and level of care provided, hospices are paid a per diem rate, per patient. 42 C.F.R. § 418.302. In turn, the hospice must pay for all services related to the patient's terminal illness. Patients who are not terminal are most profitable for hospices. Consequently, there is an incentive to admit and keep patients who are not terminally ill.

27. All healthcare providers, including Vitas, must comply with all applicable statutes, regulations and guidelines to be reimbursed by Medicare. For example, Medicare reimburses only reasonable and necessary medical services, "economically and only when, and to the extent, medically necessary." 42 USC § 1320C-5(a)(1); *See* 42 U.S.C. § 1395y(a)(1)(A).

**B. PLAINTIFF'S DISCOVERY OF DEFENDANTS' FRAUDULENT SCHEME**

28. Dr. Freedman arrived at Vitas after working for fourteen years as a palliative care physician. Desiring less hours, he accepted a position as a half-time Team Physician at Vitas.

29. When Dr. Freedman began at Vitas, he was asked by then-acting HMD Dr. Forrest Beatty, if he was interested in taking over the HMD position. Dr. Freedman initially replied that

he was not. For him, working closely with other teams and face-to-face time with patients was a far more fulfilling prospect than re-entering management.

30. Prior to Dr. Freedman's hire, Ms. Luis began at Vitas in the Admissions Department, quickly ascending to Team Nurse, and eventually Patient Care Administrator for over 425 patients at the Vitas Easy Bay location. From Dr. Freedman's early days, Ms. Luis and Dr. Freedman shared a strong professional relationship despite working on different clinical teams. Each of them had a commitment to clinical excellence, giving patients and families the best possible experience, and prioritizing staff well-being, education, and morale.

31. In December 2015, Dr. Beatty again broached the topic of Dr. Freedman taking over the position of HMD. Dr. Freedman considered a leadership position at Vitas for the first time due largely to his shared vision with Ms. Luis. He was convinced they could lift Vitas to new levels of healthcare distinction. Dr. Freedman was properly vetted, and became the Vitas East Bay Hospice Medical Director in January 2016.

32. Weeks into his new position, Dr. Freedman learned of significant gaps in Vitas' compliance with Medicare hospice regulations.

33. The Vitas' Admissions Department operated a wide open door for referred patients, whether terminally ill or not, and used a number of tactics for harnessing hesitant patients into its hospice program.

34. Many patients are reluctant to sign onto hospice care because they feel it is synonymous with "giving up," they feel it means they "are dying," or they simply desire aggressive curative care.

35. Vitas' Admissions staff would deceive patients who were opposed to hospice care by using the term "comfort care" rather than "hospice" and describing it as simply occasional nurse visits to patients' homes. Hospice regulations explicitly require that patients consent to hospice care: this is impossible if the patient receives deceptive information, or if their consent is obtained deceptively.

36. For example, one 47 year old patient signed onto the Vitas Hospice Program by his

wife without his consent. The patient was fully "decisional," meaning that he had the ability to consent or refuse care. He repeatedly requested aggressive life-prolonging care not compatible with hospice. He was in hospice care for 18 days before removing himself from receiving services he did not want. This caused a great deal of family and patient stress, and Vitas was to blame for this kind of patient suffering.

37. In many cases, the news that a family member qualifies for hospice care comes as a shock and destabilizes patients and families who want to continue certain life-prolonging treatments. Routinely, the Admissions Department told patients they could go on and off hospice if they desired procedures such as blood transfusions. This is a violation of hospice regulations that require hospice treatment for patients who have decided to forgo life-prolonging care.

38. Vitas knowingly created and submitted documentation representing that certain incoming patients were "terminally ill," when they were not. Vitas East Bay's founding and only other HMD, Dr. Beatty, had a well-known policy of giving newly admitted patients a "six month trial period" to see if they "decline." This policy resulted in undeserved Medicare reimbursements to Vitas.

39. Medicare regulations require that admitted patients who are later found not to deserve a six month prognosis be discharged. Once admitted to hospice services, Vitas staff routinely recertify nearly all patients, keeping them on hospice for at least six months, and often years, despite no demonstration of clinical decline and no attempt to demonstrate adherence to Medicare disease-specific prognostic guidelines.

40. The Vitas' Admissions Department worked closely with the Marketing Department to aggressively enroll patients, in part by maintaining strong ties to various Assisted Living Facilities. Vitas East Bay had the highest proportion of patients enrolled from Assisted Living Facilities, board and care homes across all Vitas locations nationwide. The Admissions Department would refuse, however, to collaborate closely with medical teams, often failing to manage patients' out-of-control symptoms at the time of admission.

41. For many Vitas hospice patients, there was no evidence whatsoever that they had a "medical prognosis of six months or less to live," and yet, Vitas continued to seek and receive

Medicare funds for them. Dr. Freedman later learned that for the years 2010-2014 Vitas East Bay did not turn away a *single* patient for not having a terminal prognosis. This statistic demonstrates Vitas' policy of accepting all referred patients regardless of their terminal status, given that practically speaking, every hospice receives referrals for patients who are not terminally ill.

42. Hospice patients who are not actually terminally ill were especially profitable to Vitas, because they typically require less care and the expenditure of substantially less resources. Vitas continued to collect significant amounts from Medicare for each recertified patient, padding its profits and expecting its doctors and staff to comply with its scheme.

43. Many doctors and staff received pressure from management to certify and/or recertify patients as eligible for Medicare hospice care. Vitas' upper management and corporate leadership told Admissions nurses not to do the standard physical assessment during intake, forcing nurses to rely on family reports or medical records. Karen Peterson, Vitas' Chief Nursing Officer, who oversees clinical and nursing operations for Vitas nationwide, instituted this tactic.

44. Dr. Freedman also learned that Vitas provided minimal training for doctors, nurses and staff, and had an inadequate approach to the chart audits required by Medicare.

45. Ms. Luis and Dr. Freedman believed that Vitas' fraudulent scheme involved hundreds of patients, all of whom they personally witnessed traverse through Vitas' Admissions during their tenures.

### C. PLAINTIFF'S ATTEMPTS TO STOP DEFENDANTS' FRAUD, AND DEFENDANTS' RETALIATION

46. Dr. Freedman could not, in good conscience, comply with Vitas' fraud. Aside from being illegal, Vitas' activities contradicted the principles of treatment and care that Dr. Freedman as a Board certified Palliative care physician, valued so highly. Dr. Freedman believed that his job as HMD was to deliver the highest quality care, develop and support staff, create a positive and safe culture, and make Vitas hospice the area's best in terms of care and service.

47. Dr. Freedman had the specific responsibility of assuring appropriateness for Hospice of patients, with Ms. Luis as his ally. For this reason, they concluded that significant changes within the Vitas' Hospice Admissions Department were urgently needed.

1. **Plaintiff's First Attempts to Stop Defendants' Fraud**

48. Within a few weeks as HMD and discovering the glaring deficiencies in Vitas' internal protocols, Dr. Freedman met twice with Jill Heifetz (Admissions Manager), Bruce Davis (Senior General Manager of Vitas East Bay), and Ms. Luis in an effort to reduce inappropriate admissions and ensure that uncontrolled symptoms were addressed promptly, rather than having patients suffer until care teams took over. Ms. Luis and Dr. Freedman made tangible suggestions for improvement.

49. Ms. Heifetz responded with defensiveness and hostility, strongly resisting any departures from "the way we've always done it." Commitments were reluctantly made, but never honored. The Admissions Department stonewalled all efforts at improvement.

50. After these two meetings, Bruce Davis cancelled all future meetings between Dr. Freedman and the Admissions Department.

2. **Plaintiff's Second Attempt to Stop Defendants' Fraud**

51. Dr. Freedman next met with Dr. Alen Voskanian, California Medical Director, seeking his advice and support about the fraudulent conduct he witnessed. Dr. Freedman detailed specific cases and policies he found ethically compromised.

52. While Dr. Voskanian concurred with Dr. Freedman's medical evaluation in most of his cited examples, he claimed that Admissions Management does not report to Clinical Management of which he and Dr. Freedman were part, and that his hands were therefore tied. Dr. Voskinian declined to intervene.

3. **Plaintiff's Third Attempt to Stop Defendants' Fraud**

53. In March 2016, Bruce Davis hired an Assistant General Manager, Brian Pienta, and promptly gave him responsibility for Clinical Services and Admissions. Dr. Freedman and Ms. Luis began a series of meetings with him with the intention of improving Admissions care and ensuring clinical appropriateness of patients.

54. Dr. Freedman was told that he and Ms. Luis could not meet directly with the Admissions Manager, or address issues at the time of admission. Despite numerous respectful efforts, there was no change in Admissions procedures. In fact, efforts by Dr. Freedman to be

notified prior to admitting certain patients were rebuffed, resulting in additional inappropriate admissions.

**4. Plaintiff's Fourth Attempt to Stop Defendants' Fraud**

55. On June 28, 2016, Dr. Freedman wrote an email to Ms. Luis, Brian Pienta, and Bruce Davis, to applaud Ms. Luis' conduct with a particular patient who was inappropriately certified. Dr. Freedman informed Pienta and Davis, Ms. Luis' supervisors, that her reaction was "in the spirit of improving care for our patients, not blaming or making people feel bad about their work or themselves." Dr. Freedman continued, "[t]his is great modelling for everyone that works here and will allow us over time to deliver the consistently outstanding care that we all strive to deliver." He suggested using this incident as an example to demonstrate best practices to other Vitas physicians and staff.

56. Neither Manager responded to Dr. Freedman's letter, and around this time, efforts were begun to force Ms. Luis out of the company. These efforts were ultimately successful.

**5. Plaintiff Intensifies His Efforts to Stop Defendants' Fraud**

57. Devastated at the loss of his ally and believing that Ms. Luis' continued employment was the only hope of improving Vitas, Dr. Freedman urged Ms. Luis' supervisors to allow her to return. They would not budge.

58. Increasingly concerned with the harm that Vitas was doing to itself and its patients, on July 21, 2016 Dr. Freedman drafted another letter transmitted via email to Vitas East Bay's top-level managers. This thirteen paragraph memorandum explicitly listed the glaring deficiencies with Admissions and other departments, stating in pertinent part:

> "there has been zero accountability for the Admissions department. The implications of this include: Compliance issues in terms of appropriateness of patients and coverage of medications and procedures. We have a physician who does 75% of our admissions who is allied with the [Admissions Department] and he has been unwilling to refuse to admit patients who do not qualify. . . As he has for years, he views his role as admitting the patients Admissions presents to him. He has told me that when he has pushed back in the past, he generally incurred the wrath of the [Admissions Department]."

59. Dr. Freedman also cited examples of patients who were negatively affected as a result of the compliance issues described.

60. JoAnn Mack, Senior Vice President of Operations for Vitas Western Region, responded to Mr. Freedman's letter by requesting an in-person meeting. On July 25, 2016, Dr. Freedman met with Mack, National Director Karen Peterson, and Northern California Vice President Brian Davis to discuss his concerns.

61. In the meeting, Dr. Freedman explicitly repeated his vehement objections to the individual and systemic behaviors that have resulted in Vitas' inappropriate patient admissions. He told them he was instructed not to approach the Admissions Manager about these issues, his efforts to remedy them had been consistently rejected, and he identified many senior level Vitas' employees privy to this ongoing fraud.

62. Frustrated, hopeless, and feeling tremendously compromised in his role as HMD, the next day, Dr. Freedman requested a return to his prior position as Team Physician. He knew that he could not continue to be clinically responsible for a program that routinely engaged in illegal activities. Knowing that Vitas East Bay was already perilously short on physician staffing, Dr. Freedman felt compelled to continue on in a clinical role, rather than resigning entirely. The next day, he left on a pre-planned vacation.

### 6. Defendants Terminate Plaintiff for Reporting and Interfering With Their Illegal Activities

63. Two weeks later, Dr. Freedman returned to work and found a termination letter on his desk. Defendants escorted Dr. Freedman out of the office virtually immediately, with no access to his email or case files. Vitas told other staff that Dr. Freedman left for "personal reasons" and not to contact him. Adding insult to injury, Vitas has still failed to pay Dr. Freedman wages owed to him for–at a minimum–his last week of work.

64. California law broadly protects employees who attempt to report misconduct from retaliation such as this. These whistleblower protections are most clearly expressed in Labor Code section 1102.5, which provides in pertinent part:

> (b) An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes

> that the employee disclosed or may disclose information, . . . to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, . . . if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

Cal. Lab. Code § 1102.5.

65. In blatant violation of this law, Defendants retaliated against Plaintiff for raising their legitimate concerns regarding Defendants' fraud. There was no other conceivable cause for his termination two business days after his meeting with senior management. Dr. Freedman received exclusively positive feedback for all his clinical care and leadership and his performance reviews were outstanding.

66. Left no choice but to turn to the judicial system for redress, Dr. Freedman brings these claims in an effort to put an end to Defendants' campaign of fraudulent activity which takes advantage of some of society's sickest individuals in its wake. Defendants must be held responsible for their intentional thieving of Medicare funds and complete disregard for patients' wellbeing.

## V. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### RETALIATION
### LAB. CODE § 1102.5
### (BY PLAINTIFF AGAINST ALL DEFENDANTS)

67. Plaintiff incorporates by reference and realleges the foregoing paragraphs of this Complaint.

68. Plaintiff had reasonable cause to believe that Defendants had violated federal and state law by, *inter alia*, committing Medicare fraud.

69. Plaintiff disclosed to Defendants his belief that the law had been violated.

70. Defendants had authority over Plaintiff, and had authority to investigate, discover, or correct the violations raised by Plaintiff.

71. Defendants retaliated against Plaintiff for internally reporting that information, and

based upon the belief that Plaintiff could report that information to legal authorities. Defendants retaliated by terminating and/or constructively terminating Plaintiff's employment.

72. Defendants' conduct was in violation of California Labor Code § 1102.5.

73. As a direct and proximate cause of Defendants' wrongful conduct, Plaintiff has suffered damages, including, but not limited to, loss of salary, and other valuable employee benefits all in an amount according to proof.

WHEREFORE, Plaintiff prays for the relief as set forth below.

**<u>SECOND CAUSE OF ACTION</u>**
**WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**
**(BY PLAINTIFF AGAINST ALL DEFENDANTS)**

74. Plaintiff incorporates by reference and realleges the foregoing paragraphs of this Complaint.

75. By the conduct herein alleged, Defendants threatened, harassed and discriminated against Plaintiff in the terms and conditions of his employment, and ultimately terminated his employment, directly or constructively.

76. This conduct was in violation of public policy, including, *inter alia*, California Government Code § 1102.5, and was taken to punish Plaintiff for his opposition to Defendants' illegal practices.

77. Plaintiff's refusal to engage in, *inter alia*, Defendants' Medicare fraud was a substantial motivating reason for Plaintiff's discharge.

78. As a direct and proximate cause of Defendants' wrongful conduct, Plaintiff has suffered damages, including, but not limited to, loss of salary, stock options, and other valuable employee benefits. Additionally, the actions of Defendants were carried out in a deliberate manner in conscious disregard of the rights of Plaintiff and were intended to harm him, were malicious, and despicable. Plaintiff is therefore entitled to punitive damages against Defendants in an amount sufficient to punish Defendants, and to deter future similar misconduct.

WHEREFORE, Plaintiff prays for the relief as set forth below.

**THIRD CAUSE OF ACTION**
**FAILURE TO PAY WAGES DUE; WAITING TIME PENALTIES**
**LAB. CODE §§ 201, 202, 203**
**(BY PLAINTIFF AGAINST ALL DEFENDANTS)**

79. Plaintiff incorporates by reference and realleges the foregoing paragraphs of this Complaint.

80. Section 201 of the California Labor Code requires employers that terminate an employee to pay the employee all wages "earned and unpaid" immediately at the time of discharge. Section 202 of the California Labor Code requires that when an employee quits a job, the employer must pay all wages earned and unpaid no later than 72 hours after the employee quits, unless the employee has given 72 hours' notice, in which case wages are due at the time of quitting.

81. When an employer willfully fails to make timely payment of amounts due departing employees under Section 201 or 202 of the California Labor Code, section 203 of the Code provides that the employer owes the employee a full day's pay (at the regular rate of compensation) for each day of delay in payment, up to a maximum of 30 days.

82. In violation of California law, Defendants have failed to pay and refuse to pay all compensation owed to Plaintiff upon termination, and failed to make final compensation payments within the required time period.

83. As a direct result of Defendants' failure and refusal to pay all wages due at termination to Plaintiff, Plaintiff has suffered and continues to suffer substantial losses related to the use and enjoyment of such wages, lost interest on such wages, and expenses and attorneys' fees associated with this effort to compel Defendants to fully perform their obligation under state law. Plaintiff is entitled to recover compensation due for all wages due at termination, including any reimbursable funds from applicable health plans in an amount according to proof at time of trial.

84. Plaintiff further requests payment of the applicable "waiting time" penalties under Labor Code section 203, as well as interest, attorneys' fees and costs, and such other penalties and legal and equitable remedies as are provided by law.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court enter judgment in their favor on each and every claim for relief set forth above, and award them relief including, but not limited to, the following.

1. General, special, and consequential damages sustained by Plaintiff according to proof;
2. Prejudgment interest at the maximum rate;
3. Costs of the proceedings herein;
4. Reasonable attorney's fees;
5. Punitive damages;
6. Waiting time penalties; and
7. All such other and further relief as the Court deems just and proper.

Dated: June 14, 2017

COTCHETT, PITRE & McCARTHY, LLP

By: ______________________
JUSTIN T. BERGER
TAMARAH P. PREVOST

*Attorneys for Plaintiffs*

## VII. JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: June 14, 2017

COTCHETT, PITRE & McCARTHY, LLP

By: ______________________
JUSTIN T. BERGER
TAMARAH P. PREVOST

*Attorney for Plaintiffs*

# Exhibit B

CSC

LDD / ALL
**Transmittal Number: 16798005**
**Date Processed: 06/22/2017**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Dean Robertson Esq.<br>Vitas Healthcare Corporation<br>201 S Biscayne Blvd<br>Suite 400<br>Miami, FL 33131 |
| **Electronic copy provided to:** | Rena Damas |
| **Entity:** | Vitas Healthcare Corporation of California<br>Entity ID Number 1628509 |
| **Entity Served:** | Vitas Healthcare Corporation of California |
| **Title of Action:** | Steven M. Freedman, M.D. vs. Vitas Solutions, Inc. |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Wrongful Termination |
| **Court/Agency:** | Contra Costa County Superior Court, California |
| **Case/Reference No:** | C 17-01076 |
| **Jurisdiction Served:** | California |
| **Date Served on CSC:** | 06/21/2017 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Cotchett, Pitre & McCarthy, LLP<br>650-697-6000 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

2711 Centerville Road Wilmington, DE 19808 (888) 690-2882 | sop@cscglobal.com

# Exhibit C

JOHN F. BAUM (SBN 148366)
AMY A. DURGAN (SBN 245325)
HIRSCHFELD KRAEMER LLP
505 Montgomery Street 13th Floor
San Francisco, CA 94111
Telephone: (415) 835-9000
Facsimile: (415) 834-0443

Attorneys for Defendants
VITAS SOLUTIONS, INC., VITAS HME SOLUTIONS, INC., VITAS HEALTHCARE CORPORATION OF CALIFORNIA, and VITAS HEALTH SERVICES OF CALIFORNIA, INC.

FILED

2017 JUL 19 A 11:02

STEPHEN H. NASH
CLERK OF THE SUPERIOR COURT
COUNTY OF CONTRA COSTA, CA
BY: ____________
DEPUTY CLERK

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF CONTRA COSTA

STEVEN M. FREEDMAN, M.D.,

Plaintiff,

vs.

VITAS SOLUTIONS, INC., a Delaware corporation; VITAS HME SOLUTIONS, INC., a Delaware corporation; VITAS HEALTHCARE CORPORATION OF CALIFORNIA, INC., a California corporation; and DOES 1-50,

Defendants.

Case No. C-17-01076

**ANSWER TO COMPLAINT FOR MONEY DAMAGES AND INJUNCTIVE RELIEF**

**[Assigned for All Purposes to Hon. Ed Weil, Dept. 39]**

**Complaint Filed:** June 14, 2017

BY FAX

Defendants VITAS SOLUTIONS, INC., VITAS HME SOLUTIONS, INC., VITAS HEALTHCARE CORPORATION OF CALIFORNIA, and VITAS HEALTH SERVICES OF CALIFORNIA ("Defendants") hereby answer Plaintiff STEVEN M. FREEDMAN, M.D.'s ("Plaintiff") unverified Complaint for Money Damages and Injunctive Relief ("Complaint") as follows:

## GENERAL DENIAL

Pursuant to California Code of Civil Procedure section 431.30(d), Defendants generally deny each and every allegation contained in the Complaint. Defendants further deny that Plaintiff

has been damaged in any sum or amount whatsoever, and deny that Plaintiff is entitled to any damages, punitive or otherwise, in any sum or amount whatsoever.

Defendants assert the following affirmative defenses:

**FIRST AFFIRMATIVE DEFENSE**

**(Failure to State a Claim)**

1. The Complaint, and each cause of action set forth therein, fails to state facts sufficient to constitute any cause of action, or to set forth a claim upon which relief can be granted.

**SECOND AFFIRMATIVE DEFENSE**

**(Estoppel / Unclean Hands / Waiver)**

2. Any recovery on Plaintiff's Complaint, or any purported cause of action alleged therein, is barred in whole or in part, by the doctrines of estoppel, unclean hands, and/or waiver.

**THIRD AFFIRMATIVE DEFENSE**

**(Failure to Exhaust Administrative Remedies)**

3. The Complaint, and each cause of action set forth therein, is barred in that Plaintiff has failed to exhaust his administrative remedies.

**FOURTH AFFIRMATIVE DEFENSE**

**(After-Acquired Evidence)**

4. Plaintiff's claims for relief are barred by evidence of misconduct by Plaintiff acquired by Defendants after the cessation of Plaintiff's employment.

**FIFTH AFFIRMATIVE DEFENSE**

**(Punitive Damages)**

5. Plaintiff's claim for punitive damages is barred in that he has failed to plead facts sufficient to support allegations of malice, oppression or fraud, or of any ratification of any such acts by Defendants. In addition, the claim is barred by Defendants' good faith efforts to comply with all applicable laws. To the extent that such act is found that would support an award of punitive damages, Plaintiff's recovery of punitive damages against Defendants is unconstitutional under numerous provisions of the United States and California Constitutions.

///

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**SIXTH AFFIRMATIVE DEFENSE**

**(Mitigation)**

6. Plaintiff has failed to mitigate his damages, and, to the extent of such failure, any damages awarded to Plaintiff should be reduced accordingly.

**SEVENTH AFFIRMATIVE DEFENSE**

**(Good Faith)**

7. Plaintiff's claims are barred in whole or in part, and/or his damages are limited, because, at all times, Defendants acted without malice and with the good faith belief in the propriety of their conduct, and based upon reasonable grounds. Any and all conduct of which Plaintiff complains, and which is attributed to Defendants, was a just and proper exercise of management discretion on its part, undertaken for a fair and honest reason, and regulated in good faith under the circumstances then existing.

**EIGHTH AFFIRMATIVE DEFENSE**

**(Statute of Limitations)**

8. The Complaint, and each cause of action set forth therein, is barred in whole or in part by applicable statutes of limitations.

**NINTH AFFIRMATIVE DEFENSE**

**(Laches)**

9. The Complaint, and each of cause of action set forth therein, is barred by laches and other time limitations.

**TENTH AFFIRMATIVE DEFENSE**

**(Attorneys' Fees)**

10. As an affirmative defense to Plaintiff's prayer for attorneys' fees, Defendants aver that Plaintiff has failed to state facts sufficient to recover attorneys' fees.

///

///

///

///

**ELEVENTH AFFIRMATIVE DEFENSE**

**(Lack of Knowledge)**

11. As an affirmative defense to each of Plaintiff's causes of action, Defendants aver that the claims, in whole or in part, are barred because Defendants had no knowledge that Plaintiff was subject to retaliation as alleged in his Complaint.

**TWELFTH AFFIRMATIVE DEFENSE**

**(Appropriate Remedial Action)**

12. All reasonable steps to prevent an alleged retaliation were taken once Defendants was made aware of Plaintiff's complaints.

**THIRTEENTH AFFIRMATIVE DEFENSE**

**(Good Faith Dispute As To Wages Owed)**

13. Although Defendants deny that any damages, liability or amounts are owed to Plaintiff, if it should be determined that anything is owed to Plaintiff, then Defendants allege, upon information and belief, that at all times relevant to this action, a reasonable, good faith dispute existed as to whether any such amounts were in fact owed to Plaintiff and that there was no willful failure to pay any wages allegedly owed to Plaintiff.

**RIGHT TO AMEND AFFIRMATIVE DEFENSES**

Defendants have no independent knowledge, as of the filing of this Answer, of all facts allegedly constituting the causes of action in the Complaint, and based thereon, hereby respectfully request leave of this Court to amend this Answer to include those affirmative defenses that are revealed during the course of Defendants' discovery.

WHEREFORE, Defendants pray for judgment against Plaintiff as follows:

1. That Plaintiff takes nothing by his Complaint and that judgment be entered in favor of Defendants on each and every one of Plaintiff's causes of action;

///

///

///

///

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2. That Defendants be awarded their costs of suit incurred herein;

3. That Defendants be awarded their reasonable attorneys' fees; and,

4. For such other and further relief as this Court deems just and proper.

Dated: July 19, 2017

HIRSCHFELD KRAEMER LLP

By: ______________________
John F. Baum
Amy A. Durgan
Attorneys for Defendants
VITAS SOLUTIONS, INC., VITAS HME SOLUTIONS, INC., VITAS HEALTHCARE CORPORATION OF CALIFORNIA, and VITAS HEALTH SERVICES OF CALIFORNIA, INC.

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO**

I, the undersigned, am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is 505 Montgomery Street 13th Floor, San Francisco, California 94111. On July 19, 2017, I served the following document(s) by the method indicated below:

**ANSWER TO COMPLAINT FOR MONEY DAMAGES AND INJUNCTIVE RELIEF**

☒ by placing the document(s) listed above in a sealed envelope(s) with postage thereon fully prepaid, in the **United States mail** at San Francisco, California addressed as set forth below. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited in the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ by placing the document(s) listed above in a sealed envelope(s) and by causing **messenger delivery** of the envelope(s) to the person(s) at the address(es) set forth below. I am readily familiar with the business practice of my place of employment with respect to the collection and processing of correspondence, pleadings and notices for hand delivery. On July 19, 2017, I caused to be served via messenger the above-listed documents.

☐ by **personally delivering** the document(s) listed above to the person(s) at the address(es) set forth below.

☐ by placing the document(s) listed above in a sealed envelope(s) and consigning it to an **express mail service** for guaranteed delivery on the next business day following the date of consignment to the address(es) set forth below.

***Attorneys for Plaintiff:***

Justin T. Berger
Tamarah P. Prevost
COTCHETT, PITRE & MCCARTHY, LLP
840 Malcolm Road
Burlingame, CA 94010
Phone: (650) 697-6000
Fax: (650) 692-3606
Email: jberger@cpmlegal.com
tprevost@cpmlegal.com

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on July 19, 2017, at San Francisco, California.

C. Ludlow
Crystal Ludlow

Hirschfeld Kraemer LLP
Attorneys At Law
San Francisco

## CERTIFICATE OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO**

I am a citizen of the United States and a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is 505 Montgomery Street 13th Floor, San Francisco, California 94111. On July 21, 2017, I served the following document(s) by the method indicated below:

**DEFENDANT VITAS HEALTHCARE CORPORATION OF CALIFORNIA'S NOTICE OF REMOVAL TO FEDERAL COURT UNDER 28 U.S.C. §§ 1332; 1441 (a), (b) [DIVERSITY JURISDICTION]**

☒ by placing the document(s) listed above in a sealed envelope(s) with postage thereon fully prepaid, in the **United States mail** at San Francisco, California addressed as set forth below. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited in the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ by placing the document(s) listed above in a sealed envelope(s) and by causing **messenger delivery** of the envelope(s) to the person(s) at the address(es) set forth below. I am readily familiar with the business practice of my place of employment with respect to the collection and processing of correspondence, pleadings and notices for hand delivery. On July 21, 2017, I caused to be served via messenger the above-listed documents.

☐ by **personally delivering** the document(s) listed above to the person(s) at the address(es) set forth below.

☐ by placing the document(s) listed above in a sealed envelope(s) and consigning it to an **express mail service** for guaranteed delivery on the next business day following the date of consignment to the address(es) set forth below.

***Attorneys for Plaintiff:***

Justin T. Berger, Esq.
Tamarah P. Prevost, Esq.
COTCHETT, PITRE & MCCARTHY, LLP
840 Malcolm Road
Burlingame, CA 94010
Phone: (650) 697-6000
Fax: (650) 692-3606
Email: jberger@cpmlegal.com
tprevost@cpmlegal.com

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that I am employed by an officer of a member of the bar of this Court at whose direction the service was made. Executed on July 21, 2017 at San Francisco, California.

C. Ludlow
Crystal Ludlow

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO